SETH MARCIENOWSKI *vs.* HANNAH H. SANDERS, adminis-
tratrix.

Hampshire.    February 24, 1925. — April 15, 1925.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Negligence,* Invited person, Motor vehicle, Gross.  *Evidence,* Of speed.

To warrant submission to a jury of an action of tort for personal injuries
suffered while the plaintiff was a gratuitous guest of the defendant in
an automobile driven by the defendant, there must be evidence tending
to show that the defendant was guilty of gross negligence and that the
plaintiff was in the exercise of due care.

Testimony, at the trial of an action of the character above described, that
the day following the accident the defendant stated, "Well, we were
going like Hell," did not tend to show the rate of speed of the automo-
bile or that the speed was excessive or unreasonable.

Testimony tending merely to show, at the trial above described, that
shortly after the accident the defendant's "eyes looked wild; that he
was unsteady on his feet and acted like a man who had been drinking,"
did not tend to show that the operation of the automobile by the
defendant constituted gross negligence.

At the trial of the action above described, there was evidence tending to
show that as the plaintiff, with companions, shortly after noon on a
day in December, was hastening along a country road toward the house
of a neighbor a quarter of a mile distant which was on fire, the de-
fendant overtook them in his automobile and invited them to ride; that
they entered the automobile; that the road was rough, covered with
snow with ruts for one car; that the car was in these ruts, which were
"pretty straight," curving a little from time to time; that from the
point where the men entered the automobile the road sloped down for
a distance of about fifty feet and then ascended a very steep grade for
about two hundred feet; that the automobile proceeded "very fast,"
"going like Hell," between thirty-five and forty miles per hour, swayed,
left the ruts, skidded, and struck a telephone pole, and that the plaintiff
was thrown out and injured.  *Held,* that, while the evidence would
warrant a finding of negligence on the part of the defendant, it would
not warrant a finding of gross negligence; and that a verdict for the
defendant should have been ordered.

TORT for personal injuries received by the plaintiff while
riding as a guest of the defendant's intestate in an automobile
alleged in several counts to have been driven by the defend-
ant's intestate negligently and with gross negligence, or wil-
fully, wantonly and recklessly.   Writ dated January 24, 1923.

In the Superior Court, the action was tried before *Burns,* J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in his favor. The motion was denied. There was a verdict for the plaintiff in the sum of $5,000. The defendant alleged exceptions.

The case was submitted on briefs.

*A. A. Simpson, C. R. Clason & G. J. Callahan,* for the defendant.

*D. D. O'Brien & E. L. O'Brien,* for the plaintiff.

CROSBY, J. This is an action to recover for personal injuries received by the plaintiff while riding in an automobile owned and operated by one Richard Hibbard. The action was originally brought against Hibbard, who died after the date of service of the writ and before trial. He will be referred to as the defendant.

There was evidence tending to show that shortly after noon on December 24, 1922, the dwelling house of one Barnish in the town of Hadley was on fire; that the plaintiff, with two other men, all neighbors of Barnish, was walking along the highway toward the place of the fire; that the defendant, who was operating an automobile in the same direction, stopped and invited the plaintiff and the two men to ride, and they accepted; that on the front seat with the defendant was one White; that the place where the plaintiff and the men with him boarded the automobile was about a quarter of a mile distant from the fire to which they were going; that the highway was a rough country road, covered with snow "with ruts for one car; that the car was in these ruts, which were 'pretty straight,' curving a little from time to time"; that from the point where the men entered the automobile the road sloped down for a distance of about fifty feet and then ascended a very steep grade for about two hundred feet; that after picking the men up the automobile went down the grade "very fast," and while proceeding up the hill, travelling between thirty-five and forty miles an hour, it "swayed to the left and the left part of the machine" struck a telephone pole, throwing the plaintiff out of the car and causing the injuries complained of; that the automobile continued some distance

after striking the pole and stopped; that the total distance covered while the plaintiff was riding was about one hundred and fifty yards; that the defendant continuously sounded the horn; that the plaintiff did not make any protest as to the speed at which the defendant was proceeding; and that there was no other traffic on the road at that time.

The evidence warranted a finding that the plaintiff was invited by the defendant to ride in his automobile. If the jury so found, the defendant would be liable to the plaintiff if the latter was in the exercise of due care and his injuries were the result of gross negligence on the part of the defendant. *Massaletti* v. *Fitzroy*, 228 Mass. 487. *Flynn* v. *Lewis*, 231 Mass. 550. *Barry* v. *Harding*, 244 Mass. 588. *O'Leary* v. *Fash*, 245 Mass. 123.

The question is, whether upon the evidence most favorable to the plaintiff the jury were warranted in finding that the operation of the automobile under the circumstances was so blameworthy as to constitute gross negligence.

The testimony of the witness Morrissey, that the defendant said on the day following the accident that at that time, "Well we were going like Hell," was not a description of a fact; it did not tend to show the rate of speed; it was of no more significance than if the defendant had said that they were travelling rapidly or very fast. It had no tendency to show how fast they were going or that the speed was excessive or unreasonable.

Mrs. Marcienowski testified that ten or fifteen minutes after the accident the defendant was in her house; "that his eyes looked wild; that he was unsteady on his feet and acted like a man who had been drinking." This witness did not testify that there was an odor of liquor or that the defendant was intoxicated, nor did any other witness so testify. If it could have been found that he was under the influence of liquor at the time of the accident, the question remains whether upon all the evidence his operation of the automobile constituted gross negligence.

The accident happened in a country town where in case of fire those living in the vicinity would hasten to it to assist in extinguishing it. At the time of the accident the

defendant and those who rode with him were neighbors of the owner of the house, and were hurrying to the scene of the fire to render assistance; to accomplish that purpose, it was important that they should reach the house without unnecessary delay. The defendant was justified in operating his automobile at as high a rate of speed as was consistent with the safety of the public, including those who were riding with him. Manifestly the defendant was not justified in endeavoring to reach the fire quickly in operating his car in a grossly negligent manner or even negligently, yet the errand on which he was bound is a circumstance proper to be considered in determining his conduct. The evidence that he was operating his machine at the rate of thirty-five to forty miles an hour, over a rough road, that the car "jumped out of the ruts" and that in attempting to get it back it skidded and struck the pole eight or ten feet from the nearest wheel rut, would have warranted a finding of ordinary negligence, although it would not have been conclusive of such negligence. The skidding of the car was not of itself evidence of negligence. *Kelleher* v. *Newburyport*, 227 Mass. 462. *Lambert* v. *Eastern Massachusetts Street Railway*, 240 Mass. 495. Whether the plaintiff was in the exercise of due care was for the jury.

The question remains whether there was sufficient evidence to justify a finding of gross negligence. It is unnecessary to define again in detail the meaning of that term, as it has been explained and discussed in many of our decisions. *Massaletti* v. *Fitzroy, supra. O'Leary* v. *Fash, supra. Altman* v. *Aronson*, 231 Mass. 588. It is sufficient to say that gross negligence is a degree of negligence much greater than ordinary negligence. It is negligence of greater culpability than lack of due care respecting the rights of others. The evidence in the case at bar, viewed in the light most favorable to the plaintiff, fails to show that degree of negligence necessary to establish liability. The present case cannot be distinguished in principle from the recent case of *Burke* v. *Cook*, 246 Mass. 518, and is governed by it. The entry must be

*Exceptions sustained.*

*Judgment for defendant, under G. L. c. 231, § 122.*