Gants, J.
The defendant Robert Aiello, both individually and in his capacity as Trustee under Declaration of Trust by Joseph DeLuca (“Robert Aiello”), has moved on the eve of trial to dismiss all causes of action in the complaint that seek to prevent the defendants, as directors of DeLuca Market, Inc., from obtaining reimbursement from Gerald Aiello of the $316,000 Gerald paid to himself from DeLuca Market, Inc. In the alternative, the defendants move for a directed verdict on the anticipated opening statement of the plaintiff, based on the undisputed facts of the case. As another alternative, the defendants move in limine to exclude all evidence regarding all claims barred by the statute of limitations. In short, through a variety of motions, the defendants effectively seek summary judgment on *305 all claims that accrued more than three years before the instant complaint was filed (June 25, 1995, since the complaint was filed on June 25, 1998).
While much is in dispute among the parties, certain facts are agreed upon. Gerald, Robert, and Virgil Aiello are brothers. They, along with their sister, Joy Hyland, owned equal 25 percent shares in DeLuca's Market, Inc., a Massachusetts corporation that managed the DeLuca’s Market on Charles Street in the Beacon Hill section of Boston. The three brothers, at relevant times, were also employees of DeLuca’s Market, Inc. Between 1988 and 1990, Robert and Virgil each paid themselves roughly $283,000 from the retained earnings of DeLuca’s Market, Inc. They contend that these payments were salaries and bonuses paid to them as officers and employees of the corporation; Gerald contends that they were distributions to shareholders for which he, as a 25 percent shareholder, should have shared in equally. By March 1992, Gerald learned of these payments to his brothers and decided to pay himself an equal amount, with interest. In 1992, he wrote and deposited four checks to himself from the DeLuca Market, Inc. account totaling $316,000, without telling his brothers that he had done so. They later found out about Gerald’s receipt of these checks. On December 29, 1994, Robert and Virgil and a third director of DeLuca Market, Inc., acting as the Board of Directors of DeLuca Market, Inc., voted a corporate resolution in which they “decided to begin a process where Gerald will make restitution for the taken funds,” referring to the $316,000. According to that corporate resolution;
The Process is not to take monies from Geralds’ [sic] earned income or from Geralds’ [sic] earned Director fee but to take the money in a form of earned bonuses that would normally be paid directly to him. Specifically, instead of paying him; [sic] these monies will remain in the company as a form of repayment of the debt he himself incurred — i.e. He already has taken the money that that is [sic] “He has already received the money, [sic]
We will begin this process in December of 1994. And continue annually until his account is brought into a balance acceptable to common accounting practice. The annual adjustment will vary according to company income and his individual performance. The 1994 adjustment will be a $40,000. [sic] accounting adjustment where Gerald will not receive this payment; but his debt to the company will be reduced by that amount of money.
$40,000 of this so-called restitution was withheld from Gerald in 1994. It appears that additional amounts were withheld from him after June 25, 1995.
The defendants contend that the three-year tort statute of limitations for alleged breaches of fiduciary duty applies to Gerald’s causes of action complaining about the defendants’ reimbursement of what Gerald contends was his rightful shareholder distribution. They claim that Gerald knew on December 29, 1994 what the Board had decided, that his cause of action (at the latest) accrued on that date, and that more than three years had passed before he filed suit in this action on June 25, 1998.
Gerald contends that the defendants engaged in a continuing tort which originally accrued on December 29, 1994, when the Board told him they were going to withhold money from his earned bonuses, and continued with each actual withholding, thus placing all but the $40,000 withholding within the three-year statute of limitations period. In the alternative, Gerald contends that the December 29, 1994 Board resolution was not a final directive, but simply a conditional directive that the Board reserved the right to withhold up to $316,000 in amounts and at times deemed appropriate by the Board. Gerald argues that the cause of action accrued only when the condition was satisfied by the Board’s actual decision to withhold certain sums from Gerald’s earned bonus.

DISCUSSION

In examining the defendants’ motion, I begin by noting that this motion should more properly have been brought as a motion for summary judgment, where the record of undisputed facts could be carefully delineated and the Court would have adequate time to decide the motion. It is unfair to the Court to bring this dispositive motion on the eve of trial, especially given the difficulty of the issue and the absence of clear controlling authority.
Viewed in the light most favorable to the plaintiff, Gerald Aiello’s claim is that the defendants breached their fiduciary duty as directors and shareholders in a closed corporation by denying Gerald the same corporate distributions they took for themselves. Claims of breach of fiduciary duty, especially in the context of a “corporate freeze-out” by directors or majority shareholders, sound in tort and are governed by the three-year statute of limitations. Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 517 (1997); Kirley v. Kirley, 25 Mass.App.Ct. 651, 652-54 (1988).
A cause of action for breach of fiduciary duty by corporate officers and directors accrues when the “trustee repudiates the trust and the beneficiary has actual knowledge of that repudiation.” Demoulas v. Demoulas Super Markets, Inc., 424 Mass. at 518. Repudiation in this context has a broader meaning than the actual repudiation by a trustee of his fiduciary obligations; it encompasses all fraudulent conduct that would give rise to a claim of breach of fiduciaiy duty. Id. at 519. See also Houle v. Low, 407 Mass. 810, 812 (1990) (cause of action in corporate “freeze-out” claim accrued when plaintiff was informed of directors’ vote not to invite him to participate in key corporate decision). In short, abreach of fiduciary duty claim accrues when the defendant breaches his fiduciaiy duty and the plaintiff knows of the breach.
“[I]t is a well-settled rule that causes of action in tort generally accrue under G.L.c. 260, §2A, at the time the *306 plaintiff is injured.” Joseph A. Fortin Construction, Inc. v. Massachusetts Housing Finance Agency, 392 Mass. 440. 442 (1984). Once the injury is suffered, the fact that the plaintiff has suffered ongoing injuries following the action of which he complains “does not transform the alleged wrongdoing into a continuing tort.” Kirley v. Kirley, 25 Mass.App.Ct. at 655. There is no doubt that, as a result of the December 29, 1994 corporate resolution, Gerald’s cause of action against the defendants accrued in that he had been injured in the amount of 840,000 and the directors had declared their intent to seek full restitution of the $316,000. He certainly could have sued at that time for the return of the $40,000 and for a declaratory judgment voiding tire corporate resolution as to the balance of the restitution claimed. Consequently, it appears that the three-year statute of limitations period for breach of fiduciary duty started to run as of December 29, 1994, when Gerald was deprived of $40,000 of his earned bonus and notified of the defendant’s apparent intention to seek full restitution of the $316,000 he had removed from the corporation.
However, the plaintiff contends that there is a material factual dispute as to whether this corporate resolution indeed declared that the corporation would withhold all or a part of the earned bonus of the plaintiff until the amount withheld reached $316,000, or simply declared that the corporation reserved the right to do this, with decisions to be made each year as to whether money would be withheld and in what amount. While this latter reading does not appear to be the better interpretation of the corporate resolution. I cannot find that the wording of this carelessly drafted document is so clear that the plaintiff “has no reasonable expectation of proving” it to be true. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The flimsy record on which this motion rests certainly does not demonstrate the absence of a genuine material issue. Indeed, the fact that the amount of annual withholding is said to depend in part on the plaintiffs “individual performance" during die year lends some credence to the view that the defendants would decide each year whether to demand full restitution. To the extent that the corporate resolution did not require full restitution but was conditioned on future decisions as to whether to demand additional restitution, the injury would not accrue until the time of that future decision. Given the ambiguity of the corporate resolution, this issue of interpretation is properly one for the jury-
In view of this finding, I could determine that the defendants prevail on this claim on limitations grounds unless the jury finds that the corporate resolution declared that the Board reserved the right to demand full restitution depending on the plaintiffs future conduct and the defendant’s future decisions. While I anticipate that I will ask the jury to resolve this question, I also anticipate that I will ask the jury to reach the merits as to whether the defendants committed a breach of fiduciary duty by demanding repayment from Gerald of the $316,000.
I will do this because I observe that a different statute of limitations analysis would be required if one were to interpret tire plaintiffs complaint to allege the tort of conversion — that the defendants exercised dominion over the plaintiffs personal property, without right, by depriving the plaintiff of his rightful ownership of the entirety of his earned bonus. See Perlin, Mottla’s Proof of Cases in Massachusetts (1992) at §12.1. “To maintain an action for conversion, the plaintiff must show a general or special ownership in the property and a right to immediate possession.” Id. If the plaintiff had alleged conversion, the claim could not accrue until he had earned his bonus for a particular year, and was deprived of all or a portion of that bonus by the defendants. The defendants’ declaration that they intended in future years to commit what the plaintiff would allege to be a conversion would not start tire conversion limitations clock; the clock would begin only when the plaintiff had legal dominion over the annual earned bonus that tire defendants levied upon to repay the restitution. While I see no claim in the complaint that is fashioned as a conversion claim, I am troubled that the outcome of this case could be so affected by the manner in which a claim of fiduciary duty is dressed. It simply should not be the case that the merits of the plaintiffs claim willbe reached if he calls it conversion, but will not be reached if he makes the same allegations but calls it a breach of fiduciary duty. Since tire allegations in the complaint permit a claim of conversion, and since the defendants suffer no unfair prejudice by having these allegations characterized as a conversion claim, I shall, if the plaintiff so moves, grant leave to amend tire complaint to include a claim of conversion based on the same allegations already made in the complaint.
ORDER
For the foregoing reasons, this Court ORDERS that:
1. The defendants’ motion for summary judgment is ALLOWED to the extent that the plaintiff seeks reimbursement of the $40,000 withheld from his earned bonus in December 1994 or airy other reimbursement of monies withheld from his earned bonus prior to June 25, 1995, because such causes of action are barred by the three-year statute of limitations governing tort claims.
2. If the plaintiff so moves, this Court shall grant leave to amend the complaint to include a claim of conversion based on the existing allegations in the complaint. If the plaintiff so amends the complaint, the motion for summary judgment, apart from the claims described above in ¶ 1, is DENIED.
3. The jury shall be asked to make a finding of fact as to whether the December 29, 1994 corporate resolution declared that the plaintiff owes DeLuca Market, Inc. the full $316.000 or rather declared that the Board reserved the right to demand full restitution of the $316,000 depending on the plaintiffs future conduct and the defendant’s future decisions.